E. A. DALAKOW, d/b/a MONTANA ENGINEERING AND CONSTRUCTION CO., PLAINTIFF AND RESPONDENT, *v.* GLENN GEERY, DEFENDANT AND APPELLANT.

No. 9613.

Submitted September 16, 1957. Decided November 18, 1957.

Rehearing Denied December 13, 1957.

318 Pac. (2d) 253.

Messrs. Smith, Boone & Rimel, Missoula, for appellant.

Messrs. Toomey & Hughes, Helena, for respondent.

Mr. Russell E. Smith and Mr. Michael J. Hughes argued orally.

MR. CHIEF JUSTICE HARRISON:

This is an appeal from a money judgment of the District Court of Lewis and Clark County, Montana, in favor of the plaintiff, E. A. Dalakow, and against the defendant, Glenn Geery.

The present controversy arose out of the following set of facts. In August 1950, the defendant, a road construction contractor, was the successful bidder on a United States road construction project near Troy, Montana. The contract, which we will hereafter refer to as the "prime contract," awarded to him was in the sum of $267,903.65. Prior to making the bid defendant had consulted the plaintiff, a specialist in bridge construction, for the purpose of estimating certain bridge, headwall, and guardrail items on the project with the ultimate purpose in mind of subcontracting those items to plaintiff for construction if defendant was the successful bidder.

Pursuant to the above arrangement the defendant and plaintiff on August 24, 1950, entered into a written subcontract, by the terms of which plaintiff agreed to construct the headwalls, bridges and guardrail items under the · prime contract. The prime contract called for the construction of some thirty-one items of work. The first eighteen were agreed to be constructed

by defendant and the remaining thirteen plaintiff, under the subcontract, agreed to construct according to the terms and specifications of the prime contract.

The prime contract called for the completion of certain items by January 1, 1951, among these, by the testimony of the plaintiff, was the construction of 7,875 linear feet of guardrail; other items were to be completed by April 1. It was admitted on trial that the erection of plaintiff's bridges fell within this time limitation, and finally that the whole construction project was to be completed by July 1, 1951.

Plaintiff and defendant commenced work on their respective portions of the contract in the latter part of August 1950. Plaintiff testified that late in August defendant approached him on the streets of Troy, Montana, and stated that the United States wanted the work completed by December 31, 1950. He inquired of plaintiff how much he, plaintiff, thought they should charge for the accelerated completion date. Plaintiff replied no less than 20 percent of the contract price. Defendant then stated he would take the matter up with the United States and subsequently he sent his office manager, Peter Wanderer, to Seattle to negotiate the matter. These negotiations resulted in a modification of the prime contract in two respects: (1) The contract price was changed from $267,903.65 to $341,-347.65 to reflect the addition of Item 32 in the prime contract, described as "Accelerated program to complete entire project by 31 December, 1950," at a price of $73,444; and (2) Completion of the work was changed to read that all work would be completed by December 31, 1950.

The court found that shortly after the acceleration agreement was entered into the defendant met plaintiff and plaintiff's foreman, Mike Cinker, at the construction site and told plaintiff that he would get his share of the bonus if the job was finished by January 1, 1951. Plaintiff went to defendant's office in Troy, where Wanderer was in charge and asked him about the bonus (acceleration payment). Wanderer told

plaintiff it was over 21.5 percent of the over-all figure in the prime contract.

Dalakow then proceeded to accelerate the progress of his thirteen items of work by bringing in more men, working his crews overtime, and providing special accommodations for the men. All the plaintiff's items were completed before December 31; the last item, the guardrail installation, having been completed on December 23.

Plaintiff then went to see defendant on several occasions, asking that he be paid his proportionate share of the "bonus," plus other compensation allegedly due under the subcontract. Defendant put him off until finally plaintiff initiated this suit.

The complaint states four causes of action, but since proof at trial was confined to proving only one of these, the other three are unimportant for purposes of this opinion. In the third cause of action plaintiff pleads that he entered into the afore-mentioned subcontract; that subsequently plaintiff and defendant entered into an oral modification thereof by the terms of which plaintiff obligated himself to accelerate certain items of work in consideration for which he was to be paid a proportionate share of the afore-mentioned bonus; that in furtherance of the oral modification he incurred additional expense in accelerating his performance; and that he completed all of the work he contracted to do by December 31, 1950, in pursuance to the oral modification. The complaint then alleges that contrary to the oral modification defendant has not paid him any part of the bonus by reason of which there is now due and owing to plaintiff the sum of $19,279.78 with interest.

Defendant in his answer denied the oral modification, and denied that there was any sum due and owing the plaintiff.

The case was tried to the court; counsel expressly waiving a jury trial. At the conclusion of the trial the court made findings of fact and conclusions of law in accordance with plaintiff's complaint, in effect finding that there had been an oral modification of the subcontract and that such oral modifica-

tion was fully executed pursuant to the terms of section 13-907, R.C.M. 1947.

Judgment was entered for plaintiff in the sum of $17,782.91, plus 6 percent interest thereon from March 1, 1951, and the defendant perfected this appeal.

The defendant sets out twenty-five specifications of error in his brief. However he elected to resolve them into two main issues. He expressly states that no argument will be made as to the existence of the oral agreement. These two issues are: (1) Was the written contract legally modified? (2) Was the oral contract performed?

Before examining the two issues set out above, several observations with regard to the evidence in this case should be made. First, all factual matters with regard to the alleged oral modification were disputed by the defendant and his witnesses. It should be observed that it is the trial court's office to resolve these inconsistencies in the testimony, and where the evidence is fully considered and furnishes reasonable grounds for different conclusions the findings of the trial court will not be disturbed. Dalbey v. Equitable Life Assur. Soc. of U. S., 105 Mont. 587, 74 Pac. (2d) 432; Orton v. Bender, 43 Mont. 263, 115 Pac. 406. Second, in entering upon a review of the evidence on appeal this court indulges the presumption that the judgment is correct, and will draw every legitimate inference therefrom to support the presumption. Thomas v. Ball, 66 Mont. 161, 213 Pac. 597.

With these observations in mind we will now examine the two main issues in this case. As was noted before, the plaintiff under the subcontract was required to build 7,875 linear feet of guardrail. This amount was subsequently decreased to only 3,603 feet. The fact that the guardrail was completed within the time limitation is uncontested. However the defendant claims, and plaintiff admits, that this work was not completed by the plaintiff alone, but only with the help of defendant.

Plaintiff at the trial, and defendant, although hesitantly,

testified that both parties had agreed to help each other in the completion of the project. Plaintiff stated that he had helped defendant on several occasions. Although this fact is disputed by defendant, the trial court resolved this inconsistency in favor of the plaintiff. Thomas v. Ball, supra; Dalbey v. Equitable Life Assur. Soc. of U. S., supra.

Plaintiff entered into an agreement with Howard Poston to place the guardrail. Near the end of November 1950, it was observed that completion of the guardrail item by December 31 would be very difficult. The parties therefore got together and agreed to delay the guardrail item until they could talk to the engineer in charge for the United States government, with the ultimate object in mind of having him waive the completion date on that item. Over two weeks were taken up in pursuing this object with ultimate failure resulting. Thus it was not until the early part of December that the actual work on the guardrail item was commenced. At the trial it was admitted that if the guardrail item could have been delayed it would have been in the best interests of both parties. It was obvious that because of the delay Poston could not complete the job alone.

Plaintiff discussed this problem with defendant and defendant told plaintiff to see Wanderer, that anything they decided would be all right. Wanderer told plaintiff and Poston that he would do everything possible to help them complete the job. Without anything more being said on the subject, defendant sent more men and equipment of his own to help with the construction of the guardrail, and it was completed by December 23, 1950. After its completion defendant paid plaintiff the amount specified in the contract for completion of the guardrail item, making no adjustment for any work he had done on the job. It should also be observed that plaintiff never made any demand on defendant for the work plaintiff performed in his behalf.

Defendant now contends that because plaintiff did not perform the work on the guardrail item himself, that the oral

agreement was never executed; therefore the written contract was never modified, and further that plaintiff has never executed his part of the contract.

R.C.M. 1947, section 13-907, provides: "A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise."

R.C.M. 1947, section 13-727, defines an executed contract in the following manner: "An executed contract is one, the object of which is fully performed. All others are executory."

With reference to the work being performed by the plaintiff it cannot be successfully contended by the defendant that the oral contract was not performed for two reasons: (1) Plaintiff never was in default; the work was completed over a week ahead of schedule with the volunteered help of defendant; (2) The parties had mutually agreed to help each other on the contract, and each did help the other in its performance. In view of the fact that plaintiff never charged defendant for the help which he rendered in the latter's behalf, it is indeed unjust for the defendant to claim that plaintiff never performed because defendant helped him in the guardrail installation. The parties had agreed to help each other; this was part of the arrangement. The defendant will not now be heard to contradict this agreement when he has already profited by plaintiff helping him. To further indicate that mutual assistance was contemplated by the parties is the fact that defendant paid plaintiff for completion of the guardrail item as if completed by plaintiff's sole efforts.

The defendant contends however that this court had defined an executed oral agreement as one completely executed by both parties. In support of this contention he cites six Montana cases: Ikovich v. Silver Bow Motor Car Co., 117 Mont. 268, 157 Pac. (2d) 785; Continental Oil Co. v. Bell, 94 Mont. 123, 21 Pac. (2d) 65; Bauer v. Monroe, 117 Mont. 306, 158 Pac. (2d) 485; Higby v. Hooper, 124 Mont. 331, 221 Pac. (2d) 1043; Herman v. Herman, 123 Mont. 39, 207 Pac. (2d) 1155; and Fiers v. Jacobson, 123 Mont. 242, 211 Pac. (2d) 968.

It should be noted that none of those cases involve a factual situation parallel to the present one, and an examination of them will clearly show that they are distinguishable from the instant one.

Roberts v. Sinnott, 55 Mont. 369, 177 Pac. 252, is strikingly similar to the present case.

That case involved a written contract to furnish certain materials and perform the work necessary for the erection of a dwelling. The plaintiff-contractor brought action upon the original agreement and each of twenty-five oral contracts supplemental thereto. The original contract contained a stipulation that no charges for extra work would be allowed unless ordered in writing, so the defendant contended there could be no recovery on the oral agreements. But this court in the Roberts case, supra, 55 Mont. at page 372, 177 Pac. at page 252, said:

"The provision of the contract above was manifestly intended for the protection and benefit of the owner, and no reason can be suggested why it might not be waived. The authorities are quite uniform in holding that, notwithstanding such a provision, the parties may make subsequent independent oral agreements which, when executed, have the effect of modifying the original contract, and the rule has been recognized in this jurisdiction."

In Roberts v. Sinnott, supra, it will be noted that defendant did not in effect execute his part of the agreement, i. e., payment. This court however did not deny that an oral modification had been effected merely because of that fact.

Has defendant acted in some manner which tends to show that an oral modification had been effected? The record is replete with such recognition. The fact that he admittedly bent all of his own efforts to consummation of the project by December 31; that he admittedly told plaintiff's men there was a bonus for completion by the December deadline; that he aided plaintiff in completion of the guardrail item to attain the December deadline. The most outstanding fact of course

is that by the terms of the subcontract plaintiff did not have to complete the work by December 31, but could have finished by April 1, 1951. In other words the only way that defendant could get the bonus was with plaintiff's assistance. Defendant admittedly was not experienced in bridge construction. Cooperation of the plaintiff was mandatory in achieving the result sought, that is, completion of the project by December 31. All of these acts on the part of the defendant clearly indicate there was an oral agreement.

Section 13-907, supra, has its source in section 1698 of the California Civil Code, and this court, in interpreting that section, has relied heavily on the California cases interpreting the corresponding California section.

Turning then to California law, we find it said in 12 Cal. Jur. (2d) Contracts, section 182, page 400, that:

"Although it has been said that this principle that an agreement, to be executed, must be fully performed on both sides is strictly enforced when an attempt is made to set up the modification of a written contract by an oral one, it seems that the application of the principle is limited to cases where consideration is lacking and that in cases where there is adequate consideration for the oral modification and the party relying thereon has fully performed, the written contract will be enforced as modified whether or not the other party has fully performed on his part. In such cases, however, the executed oral agreement which may be proved as modifying a previous written contract must consist in the doing or the suffering of something not required to be done or suffered by the terms of the writing, and proof of every element of the oral agreement, as well as execution, must be clear and convincing."

In D. L. Godbey & Sons Const. Co. v. Deane, 39 Cal. (2d) 429, 246 Pac. (2d) 946, the California court had before it a written contract for the performance by the plaintiff of cement work on a building. The plaintiff alleged the contract had been orally modified by mutual agreement as to the terms of payment set forth in the written contract. Under the oral modi-

fication new rights and duties based upon a new method of measurement was substituted for the provisions of the written contract. Plaintiff further alleged that it had performed the contract, as modified, and sought a balance remaining due on the contract, as modified. The defendants contended that the alleged modification of the written contract was invalid due to lack of consideration because it was not in writing, relying upon section 1698 of the California Civil Code, providing that a contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise. The California court reversed a judgment for the defendants entered on a demurrer, saying, 39 Cal. (2d) at page 433, 246 Pac. (2d) at page 948:

"The situation is different, however, where there is consideration for the oral modification agreement. In such cases the rights and duties of both parties to the written contract are affected, and by performing the contract as modified each party will be in a position to execute the oral agreement on his side. It is necessary to determine, therefore, whether in such cases execution by one party is sufficient to allow him to enforce the modification against the other. The language of the cases is in conflict. It has been stated that an oral agreement to be executed within the meaning of section 1698 must be fully performed on both sides. [Citing cases.]  *  *  * On the other hand, in cases in which there was adequate consideration for the oral modification, and in which the party relying thereon had fully performed, the contract has been enforced as modified whether or not the other party had performed on his part. [Citing cases.] Since plaintiff has alleged an adequate consideration for the oral modification and full performance on its part under the terms thereof, it has stated a cause of action." D. L. Godbey & Sons Const. Co. v. Deane, supra, has been cited with approval in McKeon v. Giusto, Cal. App. 1954, 271 Pac. (2d) 877, affirmed 44 Cal. (2d) 152, 280 Pac. (2d) 782, and in Wommack v. McClure, 139 Cal. App. (2d) 641, 294 Pac. (2d) 513.

It is clear that the instant case falls within the scope of the rule enunciated in the D. L. Godbey & Sons Const. Co. case, supra.

In the present case plaintiff agreed to do something he was not bound to do under the subcontract, viz., complete the work by December 31. Defendant benefited by this performance because he received something he was not entitled to under the subcontract. The evidence is replete with his recognition that there was an oral modification, and clearly indicates that completion was almost impossible without plaintiff's assistance.

The rule announced in the Godbey case is the only rule consonant with justice and equity. It is a rule which applied does not violate the reasons for usually demanding execution by both parties—that is, that it would open the door to fraud. Under the Godbey case there is no danger of that because the new consideration for the modification clearly shows that an oral agreement actually existed.

There is one other issue the defendant raised on this appeal. That is with regard to 280 additional feet of guardrail placed after December 31, 1950. The testimony at trial is conflicting as to which of the parties, plaintiff or defendant, installed the additional amount. Suffice it to say that there were reasonable grounds for the conclusion reached by the court to the effect plaintiff had installed the additional amount. This court on the authority of Dalbey v. Equitable Life Assur. Soc. of U. S., supra, will not disturb the court's finding.

For the foregoing reasons the judgment of the District Court is affirmed.

MR. JUSTICES CASTLES, BOTTOMLY, ANGSTMAN, and ADAIR, concur.