Roscoe L. GREENUP, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. No. 2518.

United States District Court
D. Montana,
Great Falls Division.

March 18, 1965.

Rae V. Kalbfleisch, Shelby, Mont., for plaintiff.

Moody Brickett, U. S. Atty., Butte, Mont., for defendant.

JAMESON, District Judge.

Plaintiff seeks a decree declaring a federal tax lien claimed by the defendant ineffective with respect to property described in plaintiff's complaint and an order directing release of the lien. Jurisdiction is conferred by 28 U.S.C.A. § 2410. Plaintiff has moved for summary judgment. Briefs have been filed by the respective parties, and counsel have stipulated for waiver of hearing and submission of the motion on briefs.

Plaintiff, who now holds a second mortgage on the property in question, conveyed the property by warranty deed to the present record owner, LaMont Bair. Bair has demanded that plaintiff remove the cloud on the title created by the federal tax lien. The facts are undisputed.

On August 6, 1959, Stanley L. Watkins and Raymond L. Flynn were the owners of the property and entered into a contract for deed for sale of the property to William A. Stockwell and Bea Stockwell, who made a down payment of $1500. Stockwells failed to pay the installment due January 8, 1960, and default was declared at some later date.

On March 16, 1960, the defendant filed a lien for unpaid withholding employment taxes owed by Stockwells. As of October 12, 1964, there was a balance of $546.52 due on this tax lien.

On June 24, 1960, Watkins and Flynn conveyed the property by warranty deed to the plaintiff, Roscoe L. Greenup, and on June 27, 1960, Stockwells gave a quit claim deed to Watkins and Flynn. These two deeds were recorded simultaneously on July 1, 1960.

On June 17, 1964, plaintiff conveyed the property by warranty deed to LaMont Bair.

A second tax lien was filed by defendant on May 4, 1961, but defendant concedes that since it was filed subsequent to the conveyance by the taxpayers (Stockwells) to Watkins and Flynn, it would not constitute a valid lien against the property.

Relevant provisions of the Internal Revenue Code (26 U.S.C.A.) provide in pertinent part:

"§ 6321. Lien for taxes

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

"§ 6323. Validity against mortgagees, pledgees, purchasers, and judgment creditors

"(a) Invalidity of lien without notice.—Except as otherwise provided in subsection (c), the lien imposed by section 6321 shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the Secretary or his delegate—* * *."

The question as to what extent a taxpayer has "property" or "rights to property" is determined by state law, which "controls in determining the nature of the legal interest which the taxpayer had in the property." Federal law determines "the priority of competing liens asserted against the taxpayer's 'property' or 'rights to property.'" Aquilino v. United States, 1960, 363 U.S. 509, 514, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365.

The purpose of § 6323, supra, was stated in Marteney v. United States, 10 Cir. 1957, 245 F.2d 135, 138, as follows:

"The meaning of this section is that after notice has been given as permitted by state statute, the lien is enforceable against any mortgagee, pledgee, purchaser, or judgment creditor who acquires an interest thereafter. United States v. Security Trust & Sav. Bank [340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53], su-

pra; United States v. Phillips, 5 Cir., 198 F.2d 634. 'Congress enacted § 3672 to meet the harsh condition created by the holding in United States v. Snyder, 149 U.S. 210, 13 S.Ct. 846, 37 L.Ed. 705, when federal liens were few, that a secret federal tax lien was good against a purchaser for value without notice.' United States v. Gilbert Associates, Inc., supra [345 U.S. 361, 73 S.Ct. (701) 703, (97 L.Ed. 1071)]."

■ What was the nature of the property interest of the vendees (Stockwells) on the date the federal tax lien attached? The Montana Supreme Court has held in numerous cases that the vendee under a contract for deed is the equitable and beneficial owner, leaving only the naked title in the vendor "as security for the unpaid purchase price". The rule was explained in Kern et al. v. Robertson, 1932, 92 Mont. 283, 288, 12 P.2d 565, 567, as follows:

"Applying one of its fruitful principles, that what ought to be done is regarded as done, equity says that from the contract, even while yet executory, the vendee acquires a 'real' right, a right of property in the land, which though lacking legal title, and therefore equitable only, is none the less the real, beneficial ownership, subject, however, to a lien of the vendor as security for the purchase price as long as that remains unpaid. * * *"

See also State v. Kistner, 1957, 132 Mont. 437, 318 P.2d 223, and cases there cited. In that case the Montana court called attention to the fact that, "The same rule prevails in California", citing California cases, including In Re Reid's Estate, 1938, 79 P.2d 451.

The contract for deed in this case provides in part:

"In the event of default in any of the terms and conditions of this agreement, by the Buyers, the Vendors may, at their option, and without the need of giving any notice whatsoever to the Buyers, take over and immediately go into the possession of said premises. All sums paid by the Buyers to the Vendors and all improvements, additions and fixtures placed upon the premises by the Buyers shall immediately thereupon become the property of the Vendors, and the Buyers shall have no right to remove the same from the premises. In the event of default, the Buyers do agree to quietly and peaceably yield possession to the Vendors, and save the Vendors harmless from any and all expense by reason of the failure of the Buyers to so yield possession."

Section 17–102, R.C.M.1947, provides: "17–102. (8658) Relief in case of forfeiture. Whenever, by the terms of an obligation, a party thereto incurs a forfeiture, or a loss in the nature of a forfeiture, by reason of his failure to comply with its provisions, he may be relieved therefrom, upon making full compensation to the other party, except in case of a grossly negligent, wilful, or fraudulent breach of duty."

■ This section has been construed by the Montana Supreme Court in a number of cases, including Herman v. Herman, 1949, 123 Mont. 39, 44, 207 P.2d 1155, 1157, to mean that "a party is relieved of a forfeiture if he presents facts appealing to the conscience of a court of equity. (citing cases)". In the more recent case of Kovacich v. Metals Bank & Trust Co., 1961, 139 Mont. 449, 451, 365 P.2d 639, 640, the court said that, "It has been repeatedly held by this court that to come within the provisions of section 17–102, supra, a party must set forth facts of a forfeiture which will appeal to the conscience of a court of equity".

Both parties rely upon Bensinger v. Davidson, S.D.Cal.1956, 147 F.Supp. 240, where the facts in many respects are similar to the instant case. In that case the court considered California statutes (including § 3275, Cal.Civil Code, from which section 17–102, supra, was taken)

and California cases following the same rules as those in Montana with respect to the nature of a vendee's interest in property and the relief afforded in case of a forfeiture.

In Bensinger v. Davidson the plaintiff had entered into a conditional sales agreement for the sale of certain real property to Mr. and Mrs. John A. Purcell, who made a down payment of $10,000 on the purchase price of $69,500, the balance to be paid at the rate of $1200 a month. Purcells made six monthly payments totalling $7200 for a total sum of $17,200. After default the Purcells surrendered the property to Bensinger, released Bensinger for a consideration of $1500, and gave Bensinger a quit claim deed. The government tax lien, filed prior to the contract for deed, amounted to $9,846.36 plus penalty and interest.

With respect to the "property right" of the vendees, the court held that after default and surrender of possession, the vendees (Purcells) had a "potential cause of action against the vendor (Bensinger) for unjust enrichment". The court recognized that as between the vendor and vendees the interest of the vendees was properly eliminated by agreement and quit claim deed, but held that the vendor could not in such manner cut off or eliminate the government lien, and that the "government lien attached to Purcells' cause of action for unjust enrichment". Accordingly, the court deducted from the $17,200 paid by the Purcells a fair rental value and other items totalling $15,561.00, concluding that upon default the Purcells had a cause of action for unjust enrichment against Bensinger in the amount of $1639. Bensinger had resold the property, and the sum of $1639 had been placed in escrow. While the tax lien was held good to the extent of that amount, it was not recognized as prior to the vendor's right or lien except with respect to the cause of action for unjust enrichment.

In Bensinger v. Davidson, the court said in part: "The burden of proof is on the vendee, or here, the government standing in the vendee's shoes, to prove the amount by which the vendor has been unjustly enriched over and above the amounts she could properly retain (citing cases)." The court pointed out, however, that the facts were there stipulated and no question of burden of proof arose.

In the instant case, as in Bensinger v. Davidson, the lien of the vendors as security for the unpaid purchase price was prior to the government lien and would have been so recognized in any action to recover possession and enforce the lien in which the government was a party. The priority of the government lien in Bensinger v. Davidson was recognized to the extent of the vendees' cause of action against the vendor for unjust enrichment. In the instant case there is no proof of any unjust enrichment. In fact, the brief of the defendant expressly states that defendant agrees with plaintiff that the equitable question of unjust enrichment is not at issue. In the absence of a showing of any unjust enrichment, there is no property or right to property to which the lien is now attached.

In view of the fact that the vendees surrendered possession to the vendors and gave a quit claim deed for a nominal consideration, the government should still have a right to allege and prove any unjust enrichment, and for this purpose the vendors and vendees would be proper parties to this action. Since this is a motion for summary judgment, I have concluded accordingly that the defendant should be given an opportunity to allege and prove the amount of any unjust enrichment, if such showing can be made. If not, the motion for summary judgment will be granted.

It is accordingly ordered that the defendant be granted 10 days within which to advise the court and counsel for plaintiff whether it will attempt to prove that the vendees (Stockwells) had an action for unjust enrichment, to which the tax lien may attach. If not, counsel for plaintiff will prepare, serve and lodge form of judgment pursuant to Rule 11 (b) of the Local Rules of Court.